UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Case No.: 5:24-cv-00004

NEW ENGLAND PAYMENTS, INC.,

    Plaintiff,

vs.

THE CREDIT WHOLESALE COMPANY,
INC. (d/b/a "WHOLESALE PAYMENTS"),

    Defendant.

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES[1]

Plaintiff New England Payments, Inc. ("NEP") brings this Verified Complaint for Declaratory Judgment, Injunctive Relief, and Damages against Defendant The Credit Wholesale Company, Inc. (d/b/a "Wholesale Payments") ("WP"), for WP's breach of its agent agreement with NEP and interference with NEP's sale of a portion of its residual compensation to a third party (Velocity Funding). NEP will also be seeking a temporary restraining order (1) enjoining WP from obstructing, interfering with, or frustrating NEP's right to sell its residual compensation under its agent agreement; (2) enjoining WP from interfering with a letter of intent between NEP and Velocity for the sale of NEP's residual compensation to Velocity; (3) enjoining WP from withholding its assent to an assignment of NEP's residual compensation to Velocity; and (4) directing WP to undertake all other actions necessary to permit NEP to close the sale of its residual compensation under its agent agreement.

---

[1] NEP will be filing a Motion for Temporary Restraining Order and/or Preliminary Injunction.

## INTRODUCTION

1. NEP entered into an Agent Agreement with WP, which granted NEP the right to lifetime residual compensation derived from the transaction processing generated by the merchants in NEP's portfolio. Despite NEP's clear right to sell its residual portfolio under its Agent Agreement, WP has obstructed NEP's recent attempt to sell part of that portfolio to a third party (Velocity Funding). WP's interference has disrupted NEP's sale to Velocity. WP's breach of the Agent Agreement and tortious interference with NEP's letter of intent agreement with Velocity has caused NEP to lose an opportunity to sell its residual compensation for $125,000. The Agent Agreement grants NEP the right to see equitable and injunctive relief, including specific performance of the Agreement. Accordingly, NEP seeks a declaratory judgment that WP breached its Agent Agreement with NEP and a temporary restraining order a described above. NEP also seeks, in the alternative, damages if the sale cannot be consummated.

## PARTIES

2. Plaintiff New England Payments, Inc. is a corporation with principal place of business at 12 Sutherland Way, Nashua, New Hampshire 03062.

3. Defendant The Credit Wholesale Company, Inc., is a Texas corporation with a principal place of business at 7602 University Avenue, Lubbock, Texas 79423.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over NEP's claims for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57. An actual justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201 regarding whether WP breached its agent agreement with NEP.

5. This Court has subject matter jurisdiction over NEP's remaining claims pursuant to 28 U.S.C. § 1332 (diversity of citizenship jurisdiction) because the parties are citizens of different states, and the amount in controversy exceeds $75,000.

6. This court also has pendant/supplemental jurisdiction under 28 U.S.C. § 1367(a) over any state law claims herein.

7. The parties have an agreement that governs personal jurisdiction and venue. Section 8.14 of that agreement states "[j]urisdiction and venue for any claim or cause of action arising under this Agreement shall be exclusively in the state or Federal courts of Texas located in the County of this Agreement." The agreement was executed in Lubbock County, Texas.

## FACTUAL ALLEGATIONS

**A. Wholesale Payments**

8. WP is a payment and transaction processor serving businesses nationwide. It offers comprehensive solutions for all electronic transaction processing, including major credit cards, debit cards, and gift cards. WP also carries point-of-sale terminals, card readers, and other transaction-related equipment.

9. WP was founded in 2007 by its owner, Mark Hodges. Along WP's President, Greg Bernstein, they grew the company from six sales agents and three administrative staff to 80 W-2 employees and over 300 sales agents across the country.

10. WP's sales agents are independent contractors. They enter into agent agreements with WP. Under those agreements, agents solicit businesses to enter into agreements with WP for the provision of various merchant services, such as electronic transaction processing, card readers, and point-of-sale equipment.

11. Agents, in turn, are paid upfront commissions for these deals as well as "residual" commissions. "Residual" commissions are based on a small percentage of the transaction processing generated by the merchants that agents solicit to sign up with WP. These merchants and the residual income an agent earns from them are usually referred to as an agent's "portfolio."

12. Under their agreements, agents have the right to lifetime commissions from their residual portfolio (provided they become "vested"), and they have the right to sell all or a portion of their residual portfolio to third parties. The agreements provide WPI with a right of first refusal whereby an agent may present a bona fide offer to purchase all of part of his/her portfolio to WP, and WP has 21 days to match the offer and thereby purchase the agent's portfolio itself.

**B.    Robert M. Fojo and NEP's Relationship with WP**

13. NEP's owner and president, Robert M. Fojo, entered into an Agent Agreement personally with WP in June 2022. Section 8.7 of that Agreement provides that "[n]either party shall assign, delegate, subcontract, license, franchise, or in any manner attempt to extend to any third party any right or obligation under this Agreement without the prior written consent of the other party."

14. In January 2023, Mr. Fojo formed a corporation: New England Payments, Inc. He then directed NEP to enter into a new Agent Agreement with WP. The parties entered into that Agreement on March 10, 2023. *See* Ex A. Accordingly, Mr. Fojo's and WP's rights and obligations under the June 2022 Agreement were assigned to NEP and WP under the 2023 Agreement.

**C.     The Agent Agreement & NEP's Right to Lifetime Residual Compensation**

15.     As summarized above, section 8.5 of the Agent Agreement states NEP "shall be deemed an independent contractor of WP for all purposes."

16.     Sections 1.1-1.5 describe the process by which NEP solicits businesses (or "merchants") to enter into agreements with WP for the provision of various merchant services.

17.     Section 2.3 describes NEP's "residual compensation."  It states "residual compensation to Agent [NEP] will be paid as set forth in the attached Schedule A, Revenue Share Program ('Compensation')."  Schedule A states NEP earns a "residual share" of 50%, which is 50% of the revenue (after certain listed dues, assessments, and fees) from the processing generated by merchants in NEP's portfolio.  NEP's residual "[c]ompensation calculated for a month's Transactions shall be paid within thirty days (30) after receipt thereof by WP."

18.     Section 2.3(B) states "WP shall pay Compensation to Agent as set forth in this Agreement for all Merchants for any period of time during which such Merchants continue to generate revenue to WP."  Once NEP becomes "vested," WP has no right to terminate NEP's residual compensation.  NEP is vested under the Agreement and, thus, has a right to lifetime residual compensation.[2]  Indeed, section 7.1 of the Agreement states "[c]ompenation shall be paid to Agent following the termination of this Agreement."

**D.     NEP's Right to Sell Residual Portfolio and WP's Right of First Refusal**

19.     Section 8.1 states "WP agrees that Agent may sell its right to receive Compensation."  That agreement is subject to several conditions.

---

[2] Section 2.3(B) defines "Vested" to "mean that for a period of three (3) consecutive months: (a) Agent's monthly Compensations is at least $3,500.00; and (b) Agent has thirty (30) Processing Merchant Accounts (as defined below)."  NEP's President, Mr. Fojo became vested under the parties 2022 Agent Agreement, and that right was assigned under section 8.7 of that Agreement to the parties under the 2023 Agent Agreement.

20. First, Section 8.1(a) states "Agent agrees that if the Agent receives a bona fide offer to purchase some or all of the Agent's interest in the Compensation which the Agent desires to accept, Agent will notify WP of the terms of such offer in writing. ***WP is hereby granted the right of first refusal to purchase Agent's rights to Compensation at a price and on such terms equal to the offer***. WP may exercise its right of first refusal by giving written notice of such election to the Agent within 21 days of WP's receipt of the notice. If WP does not exercise its option within such period, the right of first refusal shall terminate with respect to that specific offer only. WP agrees to purchase the Compensation on such terms within 30 days thereafter. Any materially different offer or proposal must be offered first to WP."

21. Section, Section 8.1(b) states "WP shall be entitled to continue processing for all Merchants for the balance of the term of this Agreement, and any agreement to sell the Agent's rights in such Merchants must so stipulate."

22. Third, Section 8.1(c) states "WP shall be named as a party to any such agreement to sell Agent's interest in the Compensation."

23. Fourth, Section 8.1(d) states, "If this Agreement has not expired, purchaser must agree to enter into an agreement containing substantially the same terms as provided herein with respect to the Merchant Agreements for which Compensation is sold and assigned by the Agent to such purchaser."

24. Finally, Section 8.1(e) states. "[i]n the event of such sale, the terms of this Agreement shall continue between the Agent and WP as to any remaining or future Merchant Accounts. Agent shall not be relieved of any obligations under this Agreement until its expiration."

25. Accordingly, under section 8.1, NEP has the right to sell all or a portion of its residual portfolio, but it must first present any bona fide offer it receives from a third party to WP. WP then has 21 days to exercise a right of first refusal. If WP exercises that right, it must purchase NEP's portfolio on the same terms contained in the offer. If it does not exercise that right, NEP may accept the offer and sell its portfolio to that third party.

26. Nothing in section 8.1 or anywhere else in the Agent Agreement permits WP to block or frustrate NEP's right to sell its portfolio.

**E.  NEP's Sale of $5,000 in Residual Compensation to WP in March 2023**

27. On March 27, 2023, NEP entered into a Portfolio Purchase Agreement with WP.

28. Under that Agreement, NEP sold $5,000 of its residual compensation to WP for $200,000.

29. The Agreement provided that WP would pay NEP an upfront payment of $90,000. WP agreed to provide the remaining balance ($110,000) in two installment payments of $60,000 and $50,000, respectively, on the condition NEP satisfy certain sales targets.

30. WP paid NEP the upfront $90,000 payment on March 31, 2023. NEP is on track to earn the first of the two remaining installment payments in January 2024.

31. WP purchased a dollar amount – $5,000 – of NEP's residual compensation rather designating certain residual compensation from actual merchant accounts. Section 1 of the Portfolio Purchase Agreement mandates that, in March 2025, WP designate, at its discretion, certain merchant accounts within NEP's portfolio that have generated, over the prior 12-month period, average monthly residual compensation equal to the $5,000 it purchased. WP would then, going forward, be entitled to all residual compensation (including NEP's 50% share) from those accounts.

32. The Portfolio Purchase Agreement does not abrogate in any way NEP's right to sell more of its residual compensation that it did not sell to WP.

F. **NEP's Attempt to Sell More of its Residual Compensation in November 2023**

33. In November 2023, NEP decided to sell more of its residual compensation. At the time, it had – apart from the $5,000 it sold to WP in March 2023 – another $5,734.36 in compensation it had the right to sell under section 8.1 of its Agent Agreement.

34. NEP solicited an offer from Velocity Funding in Norwood, MA, to purchase merchant accounts within NEP's portfolio totaling $5,000 in residual compensation for $125,000. The terms of the offer included an upfront payment of $75,000. The remaining balance of $50,000 would be paid in three installments of $15,000, $15,000, and $20,000, at the first, second, and third anniversaries, respectively, of the closing of the sale provided NEP maintained its portfolio at certain revenue thresholds.

35. NEP emailed this offer to WP's President, Greg Bernstein, and Chief Financial Officer, John Dolan, on November 27, 2023.

36. What followed that week was a bizarre sequence of email communications from Mr. Bernstein and the company's owner, Mark Hodges. *See id.* Mr. Bernstein initially alleged the offer NEP provided was not a "bona fide" offer. He then claimed NEP had no right to sell any more of its residual compensation because it had sold $5,000 of its compensation in March 2023 (notwithstanding the fact that Velocity's offer had nothing to do with and did not impact WP's $5,000 purchase in March). He then claimed the offer was not clear enough. He then requested to speak directly with Velocity. He then claimed not to have all the necessary information to "evaluate" the offer. Finally, he stated WP would not consider the offer or facilitate NEP's right and effort to sell its compensation to Velocity.

37. The following week, NEP engaged counsel to begin interfacing with Mr. Bernstein in the hopes that WP's various positions above could be clarified and any concerns it had resolved. Mr. Bernstein informed NEP's counsel he needed two pieces of information from NEP to "evaluate" the offer: (a) the revenue data from all the merchant accounts on which the offer was premised and (b) NEP's "attrition rate."[3]

38. Mr. Bernstein's request was disingenuous: he could have easily obtained the information he requested from WP's own reporting dashboard: MX ISO/AGENT. Indeed, NEP obtained the same revenue data for all the merchant accounts in its portfolio from that dashboard in order to evaluate Velocity's offer. Mr. Bernstein also has full access to NEP's portfolio data and could easily calculate its attrition rate. Nevertheless, NEP obtained the prior 13 months of reports for all of the merchant accounts in its portfolio and calculated its attrition rate for the prior 12 months and it emailed that information to its counsel. Its counsel, in turn, forwarded that information to Mr. Bernstein on December 5, 2023.

39. Mr. Bernstein did not respond to that information.

40. NEP's counsel emailed Mr. Bernstein on December 11, 2023, requesting an update. Mr. Bernstein failed to respond.

41. The 21-day period within which WP could exercise its right-of-first refusal under section 8.1 of the Agent Agreement expired on December 18, 2023. WP did not exercise its right.

42. Rather, WP attempted to make some form of a counter-offer to NEP. The terms of that offer were never clear, and NEP never accepted it.

---

[3] An "attrition rate" is the rate at which merchants cancel their agreements with their processor. It is usually expressed as a percentage on an ongoing monthly basis.

43. NEP alerted Velocity of WP's decision not to exercise its right-of-first refusal. Velocity, in turn, requested certain information from NEP to close the sale. That information included an assignment agreement from WP. The Letter of Intent Agreement between Velocity and NEP requires that NEP provide an assignment agreement from WP.

44. Mr. Fojo emailed Mr. Bernstein on December 22 asking for an update on its position. He requested the assignment agreement he needed to provide Velocity to close the sale. An assignment agreement would assign NEP's right to its residual compensation from the merchant accounts identified in Velocity's offer from NEP to Velocity. In turn, Velocity would forward to NEP the upfront and installment payments contemplated by their agreement.

45. NEP's agreement with Velocity required that the sale close within three days of it being executed. The parties are now well beyond that deadline.

46. Mr. Bernstein's response to Mr. Fojo's December 22 email was, again, bizarre. He reverted to one of his prior positions in late November: "The Terms are not clear in the LOI. From what I'm looking at they are buying one hundred percent of the remaining residual left. I'll work up the numbers based on that assumption. Also, we cannot purchase 100% of the portfolio because you do have a rev guarantee in place currently." *See id.* His response ignored the information NEP's counsel had provided two weeks earlier and their prior efforts to bring clarity or a resolution to this impasse.

47. As of this filing, WP has failed to provide NEP with an assignment agreement, which, in turn, is prevent NEP from fulfilling its obligation under its agreement with Velocity. Thus, WP is actively obstructing NEP's right to sell its residual compensation under the Agent Agreement and interfering with NEP's agreement with Velocity. As a result, NEP's sale to Velocity is at risk of falling through, and Velocity currently has the right to cancel its agreement

with NEP because of NEP's failure (due to WP's interference) to provide the necessary assignment agreement to Velocity.

## CLAIMS

### COUNT I
*(Declaratory Judgment)*

48. NEP repeats and incorporates by reference the allegations of the paragraphs above as if fully stated herein.

49. There is a genuine and bona fide dispute and an actual controversy and disagreement between NEP and WP regarding whether WP has breached the Agent Agreement.

50. WP has breached section 8.1 of the Agent Agreement because it failed to exercise its right-of-first-refusal with respect to Velocity's offer and then refused to facilitate NEP's sale of its residual compensation to Velocity.

51. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, NEP requests, in good faith, that this Court declare that WP breached the Agent Agreement.

### COUNT II
*(Breach of Contract)*

52. NEP repeats and incorporates by reference the allegations of the paragraphs above as if fully stated herein.

53. NEP and WP entered into an Agent Agreement.

54. Section 8.1 of that Agreement provides NEP with the right to sell its residual compensation to a third party.

55. Under that same provision, NEP must first present any bona fide offer it receives from a third party to WP. WP then has 21 days to exercise a right-of-first-refusal. If WP

11

exercises that right, it must purchase NEP's portfolio on the same terms contained in the offer. If it does not exercise that right, NEP may accept the offer and sell its portfolio to that third party.

56. NEP fulfilled its obligation under section 8.1: it presented Velocity's offer to WP.

57. WP failed to exercise its right-of-first-refusal within 21 days.

58. WP has breached section 8.1 because it has refused to facilitate NEP's sale of its residual compensation to Velocity by failing to provide NEP with an assignment agreement as required by NEP's agreement with Velocity.

59. As a result of WP's breach, NEP has suffered damages: it has lost its right to $125,000 under its agreement with Velocity for the sale of its residual compensation.

## COUNT III
*(Tortious Interference with Existing Contract)*

60. NEP repeats and incorporates by reference the allegations of the paragraphs above as if fully stated herein.

61. NEP and Velocity had a valid agreement that was subject to interference.

62. NEP provided that agreement to WP.

63. WP willfully and intentionally interfered with that agreement by refusing to provide NEP with an assignment agreement as required by NEP's agreement with Velocity and, thus, preventing NEP and Velocity from closing the sale contemplated by that agreement.

64. As a result of WP's interference, NEP has suffered damages: it has lost its right to $125,000 under its agreement with Velocity for the sale of its residual compensation.

## REQUEST FOR RELIEF

WHEREFORE, NEP respectfully requests that the Court:

A. Declare WP breached the Agent Agreement;

B. Direct WP to provide NEP with the assignment agreement contemplated by NEP's agreement with Velocity and otherwise undertake all other actions necessary to assist NEP with closing the sale contemplated by NEP's agreement with Velocity;

C. Enjoin WP from any further action to frustrate or interfere with NEP's right to sell its residual compensation under section 8.1 of the Agent Agreement;

D. Enter judgment in favor of NEP on all counts;

E. Award NEP its damages, which are within the jurisdictional limits of this Court;

F. Award NEP its attorney's fees and costs pursuant to section 8.2(b) of the Agent Agreement; and

G. Award such other relief as is just and equitable.

## REQUEST FOR JURY TRIAL

NEP requests a trial by jury on all claims so triable.

Respectfully submitted,

NEW ENGLAND PAYMENTS, INC.,

By Its Attorneys,

TAULER SMITH

Dated: January 3, 2024
*/s/Robert Tauler*
Robert Tauler, Esq. (#24122095)